IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARLENE JACKSON, | : | |
| | : | |
| Plaintiff, | : | CIVIL DIVISION |
| | : | |
| v. | : | NO.: 05-33 (Erie) |
| | : | |
| WAL-MART STORES, INC., | : | |
| | : | |
| Defendant. | : | Electronically Filed |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION
FOR SUMMARY JUDGMENT OF DEFENDANT WAL-MART STORES, INC.**

Defendant Wal-Mart Stores Inc., ("Wal-Mart"), by and through its undersigned counsel, hereby submits this brief in support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

I.   **INTRODUCTION**

This is a disability discrimination case in which plaintiff Darlene Jackson alleges that Wal-Mart, her former employer, failed to reasonably accommodate her alleged disability, asthma. Wal-Mart terminated plaintiff's employment because she violated its attendance policy by repeatedly calling out sick from work, facts plaintiff does not and cannot dispute. Plaintiff now seeks to reverse her termination, arguing that Wal-Mart should have exempted her from its policy and allowed her to call out sick whenever she felt the need because of her asthma.

Plaintiff's claim stalls before getting started, for plaintiff cannot establish that she was a qualified individual with a disability under the Americans with Disabilities Act ("ADA"), or that her requested accommodation was reasonable. As detailed below:

- Plaintiff cannot meet her burden of showing that her asthma substantially limited her in any major life activity. Plaintiff testified that she could work a full-time

       job, walk quickly throughout the store, stand during a work shift, and lift heavy objects without limitation. Nor has plaintiff produced medical evidence to show that her asthma substantially limited her in any major life activity.

- Even assuming plaintiff's asthma substantially limited her in a major life activity, plaintiff is not a qualified individual under the ADA because she could not maintain regular attendance, an essential function of her job. The case law is clear that employees with poor attendance records are not 'qualified' individuals under the ADA.

- Further, even if plaintiff could establish a *prima facie* case under the ADA, her proposed accommodation — unlimited leeway under Wal-Mart's attendance policy — is inherently unreasonable because it seeks to exempt her from an essential job function (regular attendance), rather than allowing her to perform that essential function. Also, plaintiff's proposed accommodation would present an undue burden to Wal-Mart because it would negatively affect customer service, result in lost productivity and higher wage costs, and could raise safety concerns.

       Accordingly, judgment should be entered in favor of Wal-Mart and against plaintiff on her claim of disability discrimination.

## II.   STATEMENT OF MATERIAL FACTS

       Wal-Mart respectfully refers the Court to the facts as presented in its Local Rule 56.1 Statement of Material Facts and the exhibits attached thereto.[1]

---

[1] For purposes of this motion only, Wal-Mart accepts the "evidence in the light most favorable to the nonmovant, giving that party the benefit of all reasonable inferences derived from the evidence." Waldron v. SL Indus., Inc., 56 F.3d 491, 496 (3d Cir. 1995)(citations omitted).

### III.  ARGUMENT

#### A.  Summary Judgment Standard

Summary judgment must be granted when the pleadings, affidavits and discovery materials produce no "genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The non-moving party cannot escape summary judgment by introducing "a mere scintilla of evidence" in its favor, Sarko v. Penn-Del Directory Co., 968 F. Supp. 1026, 1031 (E.D. Pa. 1997) (citation omitted), aff'd, 189 F.3d 464 (3d Cir. 1999), or by relying on conclusory allegations, improbable inferences and unsupported speculation, Solt v. Alpo Petfoods, Inc., 837 F. Supp. 681 (E.D. Pa. 1993), aff'd, 30 F.3d 1488 (3d Cir. 1994).  "[W]hen the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party," the moving party is entitled to summary judgment in its favor.  Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 129 (3d Cir. 1998) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  Further, "[t]o demonstrate entitlement to summary judgment, the moving party is not required to refute the essential elements of the cause of action.  The moving party needs only to point out the absence or insufficiency of the evidence offered in support of those essential elements."  O'Dell v. Department of Public Welfare of Pa., 346 F.Supp.2d 774 (W.D. Pa. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Matsushita Elec. Indus. Co., 475 U.S. at 586-87).

#### B.  Plaintiff Is Not A Qualified Individual With a Disability

The ADA prohibits employers from discriminating based upon the known physical or mental impairments of "a qualified individual with a disability."  42 U.S.C. § 12112. To establish a *prima facie* case of discrimination under the ADA, therefore, a plaintiff must show

"(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." Williams v. Philadelphia Housing Authority Police Dept., 380 F.3d 751, 761 (3d Cir. 2004) (citing Taylor v. Phoenixville School Dist., 184 F.3d 296, 306 (3d Cir.1999)). Here, plaintiff cannot show that she is disabled under the law or that she was qualified to perform the essential functions of her job at Wal-Mart. Accordingly, plaintiff's claims should be dismissed in their entirety.

### 1. Plaintiff Cannot Show That She Has a Disability As Defined Under the ADA.

Plaintiff claims that she has a disability because she is an asthmatic and is therefore substantially limited in the major life activity of breathing. (See Pl.'s Complaint at ¶¶ 26, 27).[2] "It is insufficient for individuals attempting to prove disability status under [the ADA] to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those 'claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . .is substantial.'" Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002) (citing Albertson's, Inc. v. Kirkingburg, , 527 U.S. 555, 567 (1999). Moreover, the existence of a disability is to be determined on a case-by-case basis. Toyota Motor Mfg., 534 U.S. at 198 (citing 42 U.S.C. § 12102(2)). Indeed, "[a]n individualized assessment of the effect of an impairment is particularly necessary when the impairment is one whose symptoms vary widely

---

[2] Plaintiff also testified that she has dyslexia. (See Def.'s SMF at fn.2). Plaintiff's claims under the ADA, however, relate only to her asthma. (See Pl.'s Compl. at ¶¶ 9, 22, 26, 27).

from person to person." Id. at 199.  Such an individualized assessment is particularly necessary when dealing with asthma because the severity of this condition varies greatly from person to person, and the frequency of asthmatic episodes also varies significantly.  See Tangires v. The Johns Hopkins Hosp., 79 F. Supp. 2d 587, 595 (D. Md. 2000), aff'd, 230 F.3d 1354 (4th Cir. 2000) (citing U.S. v. Sherman, 53 F.3d 782, 787 (7th Cir. 1995)).

Additionally, whether a person is "substantially limited" in performing a major life activity is judged "with reference to corrective measures."  Sutton v. United Air Lines, Inc., 527 U.S. 471, 488 (1999).  If the impaired individual can reasonably perform the major life activity using corrective measures, they do not have a disability because such individuals "function identically to individuals without a similar impairment."  Id.  Consequently, many courts have found that asthma does not substantially limit the major life activities of working or breathing, and have, therefore, found that asthma is not a disability under the ADA.  See e.g., Ventura v. City of Independence, No. 95-3582, 1997 WL 94688, at *2 (6th Cir. March 4, 997) (finding that plaintiff, an asthmatic, was not disabled under the ADA where he was able to engage in a number of physical activities including occasional running, football, calisthenics, playing the saxophone, and water-skiing); Tangires, 79 F. Supp. 2d at 596 (finding that asthmatic plaintiff was not disabled under the ADA because her asthma was treatable and because she refused treatment); Gaddy v. Four B Corp., 953 F. Supp. 331, 331-32, 337-38 (D.Kan.1997) (finding that asthmatic plaintiff who was able to play volleyball in gym class and perform as a cheerleader, was not disabled under the ADA because her ability to breathe was not substantially limited); Suttles v. United States Postal Service, 927 F.Supp. 990, 1004 (S.D.Tex.1996) (finding that asthmatic plaintiff was not disabled under the Rehabilitation Act because he could function normally as long as he took his medication and avoided extended exposure to dust allergens,

fumes, and smoke); Emery v. Caravan of Dreams, 879 F. Supp. 640, 642, 645 (N.D.Tex.1995) (finding that plaintiff, an asthmatic, was not disabled under the ADA where she was able to lead a "normal life" that included working and engaging in activities such as rollerblading). Cf. Meyer v. Conshohocken Catholic Sch., No. 03-4693, 2004 WL 3037945 (E.D. Pa. Dec. 30, 2004) (finding that asthmatic plaintiff had a disability under the ADA because she suffered many traumatic asthmatic episodes and was frequently hospitalized for the condition).

        Here, plaintiff testified that she did not have any restrictions with regard to her asthma. (See Def.'s Statement of Material Facts ("SMF") at ¶ 8). Plaintiff even signed a form declaring that she had the ability to perform all the essential functions of her position with or without a reasonable accommodation. (See Def.'s SMF at ¶ 14). In fact, she testified that she was able to walk quickly throughout the Wal-Mart store, stand throughout a work shift, and lift heavy objects without any limitations. (See Def.'s SMF at ¶ 8) Plaintiff also testified that she could take care of her personal hygiene, drive herself to and from work, and work a full time job with her asthma condition. (See Def.'s SMF at ¶ 11). Indeed, plaintiff testified that when her asthma prevented her from working a regularly scheduled shift, it was because her asthma caused her to lose her voice only. (See Def.'s SMF at ¶ 12).

        Plaintiff also testified that she uses an inhaler and, at times, caffeine to treat her asthma symptoms. (See Def.'s SMF at ¶ 3). Plaintiff's medical records likewise reflect that her asthma had minimal impact on her daily activities. From August 2002 to June 2003, which is the relevant time period regarding her irregular attendance, plaintiff presented to her family physician on only one occasion regarding her asthma. (See Def.'s SMF at ¶ 4). During this same period, plaintiff did not call her physician regarding her asthma condition, although she did telephone his office on several occasions regarding other medical issues. (See id.) Plaintiff's

medical records further show that during this time period, plaintiff was admitted to the hospital on only one occasion, due to a cardiac issue unrelated to her asthma. (See Def.'s SMF at ¶ 6). According to her medical records, plaintiff's asthma was stable during this cardiac episode and her lungs were clear.[3] (See id.)

Taking into account plaintiff's ability to perform normal day-to-day activities, her effective remedial measures on those occasions she claimed her asthma flared up, and the lack of medical evidence regarding the effects of her condition, plaintiff fails to meet her burden of presenting evidence that her asthma condition *substantially* limited any major life activity. See Kelly v. Drexel University, 94 F.3d 102, 105 (3d Cir. 1996) (stating that the burden rests with the plaintiff to show that his condition substantially limits a major life activity).[4]

### 2. Plaintiff Was Not Qualified To Perform the Essential Functions of Her Job At Wal-Mart.

Even assuming plaintiff could proffer sufficient facts to lead a reasonable fact-finder to conclude she has a disability under the law, plaintiff still cannot show she is a "qualified individual with a disability." That term is defined as "an individual with a disability who, with or without a reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); see also Waite v. Blair,

---

[3] Moreover, plaintiff's personnel records show that she submitted just three doctors' notes during her employment at Wal-Mart. (See Def.'s SMF at ¶ 7). None of the notes state that she suffers from asthma, suggests that she suffers from any debilitating condition, or states that she is restricted from any work activity. (See id.).

[4] To the extent plaintiff also argues that Wal-Mart regarded her as disabled, plaintiff's claim also fails because there is no evidence that Wal-Mart regarded her as being substantially limited in her ability to work a broad class of jobs (when she actually came into work) or that it regarded her as being substantially limited in any other major life activity. In fact, Wal-Mart documented that it would consider plaintiff for re-hire because, but for the fact that she violated Wal-Mart's attendance policy, it believed she could satisfactorily perform her duties at Wal-Mart. (See Def.'s SMF at ¶ 33).

Inc., 937 F. Supp. 460, 471-(W.D. Pa. 1995) (finding that employer was entitled to summary judgment because plaintiff could not perform the essential functions of her position with or without an accommodation). Here, Wal-Mart's attendance policy explicitly makes clear that which is implicit — regular and punctual attendance is an essential function of plaintiff's former position. (See Def.'s SMF at ¶ 15). The Third Circuit agreed with this premise when it affirmed the District Court's finding in Santiago v. Temple University that "[a]n employee of any status, full or part time, cannot be qualified for his position if he is unable to attend the workplace to perform the required duties, *because attendance is necessarily the fundamental prerequisite to job qualification*." Santiago v. Temple Univ., 739 F. Supp. 974, 979 (E.D. Pa. 1990), aff'd, 928 F.2d 396 (3d Cir. 1991) (emphasis added); see also Meyers v. Conshohocken Catholic Sch., No. 03-4693, 2004 WL 3037945 at *8 (E.D. Pa. Dec. 20, 2004) (citing Smith v. Davis, 249, 251 (3d Cir. 2001) ("[a]n employee who does not come to work on a regular basis is not 'qualified' under the ADA"); Fogleman v. Greater Hazelton Health Alliance, 122 Fed. Appx. 581, 586 (3d Cir. 2004) (same); Tyndall v. Nat'l Educ. Cntrs, 31 F.3d 209, 213 (4th Cir. 1994) (same); EEOC v. Yellow Freight Systems, Inc., 253 F.3d 943, 948-49 (7th Cir. 2001) (same).

       Plaintiff cannot and does not dispute that she was unable to maintain regular attendance. She even wrote to Wal-Mart that she "will try harder to get to work on time, [sic] and not miss so many days of work." (See Def.'s SMF at ¶ 28). Indeed, by the time Wal-Mart formally disciplined her for her irregular attendance, plaintiff had incurred six unapproved absences within a rolling six-month period ending on January 29, 2003. (See Def.'s SMF at ¶ 25).[5] This was twice the number of unapproved absences allowed under Wal-Mart's policy.

---

[5] Several of these "absences" were actually multiple consecutive days off from work, which Wal-Mart treats as one attendance occurrence under its attendance policy. (See Def.'s SMF at ¶ 15).

(See Def.'s SMF at ¶ 18). After her "Decision-Making Day Coaching," plaintiff also was absent from work without approval on February 13 and 14, 2003 and May 29 and 30, 2003. (See Def.'s SMF at ¶ 30). Plaintiff testified that the absences she incurred in late May — which led to her termination from employment — were not even related to her asthma, but instead due to personal marriage problems. (See Def.'s SMF at ¶ 36).[6]

In sum, because plaintiff could not maintain regular attendance, she cannot demonstrate that she is a qualified individual with a disability. Her claim under the ADA, therefore, fails as a matter of law.

### C. Plaintiff's Failure To Accommodate Claim Fails Because Her Requested Accommodation — Unlimited Unscheduled Absences — Is Not A Reasonable Accommodation Under the Law.

Even if plaintiff could establish a *prima facie* case under the ADA, she still cannot show that Wal-Mart discriminated against her on the basis of any disability. The ADA requires employers to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [employer's] business." 42 U.S.C. § 12112(b)(5)(A). Summary

---

[6] In May 2003, economic conditions forced Wal-Mart Store #: 2561 to implement a reduction in its workforce ("RIF"). (See Def.'s SMF at ¶ 31). The Wal-Mart District Manager directed Store Manager Pete Burns to first consider Associates on the requisite 90-day probationary period and Associates who had received Decision-Making Day Coaching within the past year for RIF terminations. (See id.). During the RIF terminations, Wal-Mart became aware that plaintiff had incurred more unapproved absences since her Decision-Making Day Coaching, in violation of Wal-Mart's Attendance/Punctuality Policy. (See Def.'s SMF at ¶ 32). On June 7, 2003, therefore, Wal-Mart terminated plaintiff for continued violation of the Wal-Mart Attendance/Punctuality Policy. (See id.).

judgment, however, is appropriate on a reasonable accommodation claim where the plaintiff's proposed accommodation is either clearly ineffective or costly because such accommodations are not reasonable under the law. See Norman v. University of Pittsburgh, No. 00-1655, 2002 WL 32194730 at *14 (W.D. Pa. September 17, 2002) (citing Walton v. Mental Health Ass'n. of Southeastern Pa., 168 F.3d 661, 670 (3d Cir. 1999)). The term "cost," however, includes both financial as well as administrative burdens on an employer. See Gaul v. Lucent Tech., Inc., 134 F. 3d 576, 851 (3d Cir. 1998). Moreover, an employer is not obligated to provide an employee with the accommodation she requests or prefers. See Waite v. Blair, Inc., 937 F. Supp. 460, 472-473 (W.D.Pa.1995).

  Here, plaintiff now claims that she should have been granted an accommodation in the form of unlimited absences from work. (See Def.'s SMF at ¶ 35). When asked if she believed there should have been any limits on the number of times she should have been permitted to call out sick from work, plaintiff answered, "[n]ot for my asthma, I don't." (See id.). This accommodation, however, is not a reasonable under the law. As discussed in the context of the *prima facie* requirements above, excusing unlimited, unplanned absences is not a reasonable accommodation because regular attendance is crucial to any position. Nor is an accommodation designed to exempt an employee from performing an essential function reasonable under the ADA. See Donahue v. Consolidated Rail Corp., 224 F.3d 226, 232 (3d Cir. 2000) (finding that plaintiff's requested accommodation was not reasonable because it sought to either modify an essential function of the job or exempt the employee from performing that essential job function). Rather, an accommodation must assist the employee in performing any essential functions. See id.

Additionally, allowing plaintiff to call out sick from work whenever she felt the need would have placed and undue burden on Wal-Mart. Even plaintiff admits that her repeated unscheduled absences inconvenienced her co-workers and Wal-Mart's customers. (See Def.'s SMF at ¶ 28). Moreover, repeated employee absences negatively affect customer service, result in lost productivity and higher wage costs, and may involve safety issues if there are not enough employees on the sales floor. (See Def.'s SMF at ¶ 29).

Further, by requesting unlimited unscheduled absences from work, plaintiff is essentially establishing the conditions of her employment with Wal-Mart, namely when she will work. The ADA, however, does not permit an employee to alter the conditions of her employment. See Gaul, 134 F. 3d at 581 (stating that "nothing in the law leads us to conclude that in enacting the disability acts, Congress intended to interfere with personnel decisions within an organizational hierarchy").[7]

Accordingly, for this additional reason, plaintiff's failure-to-accommodate claim fails as a matter of law.

### D. Wal-Mart Accommodated Plaintiff To The Extent Reasonable.

Plaintiff's failure to accommodate claim also fails because, to the extent reasonable, Wal-Mart did accommodated her. For example, Wal-Mart allowed plaintiff to use her inhaler whenever she needed and allowed her time away from the sales floor to care for

---

[7]   To the extent plaintiff argues that unlimited absences was a reasonable accommodation because Wal-Mart, in the past, had allegedly allowed her to miss work repeatedly without consequences, this argument also fails as a matter of law. "An employer's policies that exceed the requirements of the ADA do not set the standard of reasonable accommodation nor do they demonstrate that an employer has conceded the reasonableness of such accommodations." Meyers, 2004 WL 3037945 at *9 (finding that an employer was not required to accommodate plaintiff by allowing her to miss work whenever and for however long she was ill simply because it had done so in the past).

herself.  (See Def.'s SMF at ¶ 13).  Wal-Mart also allowed plaintiff to take scheduled personal and medical leaves that did not count against her under Wal-Mart's attendance policy.  (See Def.'s SMF at ¶ 21).  From June 2002 to June 2003, for instance, Wal-Mart approved twenty-four of plaintiff's unscheduled absences from work.  (See Def.'s SMF at ¶ 17).

Additionally, Wal-Mart did not require plaintiff to work in the plant or perfume departments because she stated that these areas triggered her asthma.  (See Def.'s SMF at ¶ 9).  Indeed, Wal-Mart did not even require plaintiff to scan plants at her register because of her alleged sensitivity.  (See id.).  Plaintiff testified, however, that on several occasions she did not even wait for another Associate to scan such items because plaintiff elected to "just . . . get the customer through" herself.  (See id.).  Plaintiff presented no evidence that she was unable to keep working on those occasions.

Wal-Mart, therefore, did reasonably accommodate plaintiff.  It did not, however, grant her the accommodation she now seeks — unlimited leeway under the Wal-Mart attendance policy.  Because the law, as detailed above, did not require that of Wal-Mart, plaintiff's failure-to-accommodate claim fails as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, defendant Wal-Mart Stores, Inc. requests that judgment be entered in its favor and against plaintiff and that this case be dismissed in its entirety.

Respectfully submitted,

Dated: January 13, 2006

s/David S. Fryman
David S. Fryman
Lorena E. Ahumada
Attorney I.D. Nos.: 57623 & 91630

Attorneys for Defendant
Wal-Mart Stores, Inc.

OF COUNSEL:
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
(215) 665-8500

# CERTIFICATE OF SERVICE

I, David S. Fryman, hereby certify that on this 13th day of January, 2006, a true and correct copy of the foregoing Motion for Summary Judgment and accompanying memorandum of law of Defendant Wal-Mart Stores, Inc. were filed electronically and are available for viewing and downloading from the ECF system. I further certify that I caused a true and correct copy of the same to be served via Federal Express, overnight mail, upon the following:

        Sean P. Duff, Esquire
        Patberg, Carmody, Ging & Filippi
        527 Court Place
        Pittsburgh, PA  15219

Dated:  January 13, 2006                    s/David S. Fryman
                                                            David S. Fryman